IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GULFSTREAM PARK RACING )<br>ASSOCIATION, INC., )<br>)<br>Defendant. ) | Civil Action No. _____ |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## NATURE OF THE CASE

1.  This is a civil action brought pursuant to Clean Water Act ("CWA") Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d), against Gulfstream Park Racing Association, Inc. ("GSP" or "Defendant"). Plaintiff alleges that Defendant owns and operates a Large Concentrated Animal Feeding Operation ("CAFO") which discharged pollutants into waters of the United States in violation of certain terms, conditions and limitations of a National Pollutant Discharge Elimination System ("NPDES") Permit issued to GSP pursuant to CWA Section 402, 33 U.S.C. § 1342 (hereafter "Permit").

2.  Plaintiff seeks civil penalties against Defendant for Defendant's unpermitted discharges of pollutants into the waters of the United States, as authorized by Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

1

3. Plaintiff also seeks civil penalties against Defendant for Defendant's violation of certain terms and conditions of the NPDES Permit, as authorized by Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

## JURISDICTION, VENUE, AUTHORITY, AND NOTICE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff), and 1355 (Fine, penalty or forfeiture), and under CWA Section 309(b), 33 U.S.C. § 1319(b) (Civil actions).

5. The United States has the authority to bring this action on behalf of the Administrator of the EPA ("Administrator") under Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

6. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as CWA Section 309(b), 33 U.S.C. § 1319(b), because it is the judicial district in which the alleged violations of the CWA occurred and is where the Defendant is doing business.

7. The State of Florida, by and through the Florida Department of Environmental Protection ("FDEP"), which is not a party to this litigation, has actual notice of the commencement of this action, in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## PLAINTIFF

8.      Plaintiff the United States of America is acting at the request and on behalf of the Administrator of the EPA.

## DEFENDANT AND DEFENDANT'S FACILITY

9.      Defendant is a corporation formed in the State of Florida. Its principal place of business is located at 901 South Federal Highway, Hallandale Beach, Florida. Its registered agent is CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324. GSP is a "person" within the meaning of section 502(5) of the CWA, 33 U.S.C. § 1362(5).

10.     Defendant owns and operates a thoroughbred horse racing facility located at 901 South Federal Highway, Hallandale Beach, Broward and Miami-Dade Counties, Florida, latitude 25°58'35"N and longitude 80°08'31"W.

11.     Defendant's thoroughbred racing and casino operation site ("Site") covers approximately 243 contiguous acres. Approximately 215 acres of the Facility are located within Broward County, and the remaining approximately 28 acres are located within Miami-Dade County.

12.     The Site includes: a horse racing track ringing a 24-acre wet detention pond ("Infield Track Lake"); stables; dorms; utility and maintenance facility areas; a club house; multiple areas for surface parking; a destination complex for shopping, dining, and entertainment; and corporate offices.

13.     The Site is serviced by five stormwater drainage systems, each operating independently to collect stormwater: the Village at Gulfstream Park Commercial Development Area; the North Parking Lot Area; Clubhouse, Lake/Track, and Utility/Dorms Area; the South Parking Lot Area; and the North Barns CAFO Area.

14. Pursuant to 40 C.F.R. § 122.23(b)(8), the Site's Production Area includes horse stables, concrete horse wash pads, covered manure/bedding dumpsters, and a 5,800 square-foot manure storage/transfer building. The Production Area, together with any animal walkways, the Infield Track Lake, and the racing track, are collectively referred to herein as the "Facility."

15. The Facility's relevant CWA outfalls are located wholly within Broward County.

16. The Facility houses a maximum of 1,100 horses, which race year-round.

17. The Facility's wastewater management system is divided between two areas: the "East Barn" area and the "North Barn" area.

18. The East Barn Area diverts horse wash water from Barns 14-20 to the sanitary sewer system.

19. The "North Barn" area is located in the northeast corner of the Facility and covers approximately 17 acres. The North Barn Area includes 12 horse stable buildings (Barns 1-12) and at least 15 support structures of various sizes.

20. The North Barn Area discharges both horse wash and storm water from Barns 1-12 to a small pretreatment pond where it is chlorinated prior to flowing into the Infield Track Lake.

21. The Infield Track Lake has a surface water discharge (Outfall D-002) to a canal on the eastern border of the Site that flows to the Intracoastal Waterway, a navigable-in-fact water of the United States.

22. The Intracoastal Waterway is designated as Waterbody ID 3226 G3, and is classified as a Class III marine water pursuant to Fla. Admin. Code Ann. r. 62-302.400.

23. Outfall D-002 consists of two 48-inch corrugated metal pipes and v-notch weir control structure (Control Structure #1), originally designed to regulate lake water discharge and to prevent brackish canal water from entering the Infield Track Lake.

24. The Infield Track Lake also has an emergency 30-inch corrugated metal pipe and control structure (Control Structure #2) located north of Outfall D-002, which is used for the purpose of flood control.

25. In or around 2008, pursuant to the Facility's License to Operate Direct Discharge from Non-Domestic Activity ("License") issued by Broward County, Florida's Environmental Protection Division ("BCEPD"), Defendant installed two orifices to provide bleed down of the lake level below a weir elevation of 2.0 NAVD.[1] This results in unauthorized, twice-daily discharges from the Infield Track Lake to the Intracoastal Waterway.

## STATUTORY AND REGULATORY REQUIREMENTS

26. This action arises under the federal Clean Water Act, 33 U.S.C. §§ 1311-1387, as amended, and the regulations promulgated thereunder, which are aimed at protecting water quality by controlling the discharge of pollutants to waters of the United States.

27. The CWA is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

28. To accomplish the objectives of the CWA, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" to waters of the United States, except, *inter alia*, in compliance with an NPDES permit issued by the EPA or an authorized state pursuant to CWA Section 402, 33 U.S.C. § 1342.

---

[1] North American Vertical Datum.

29. Section 502(12) of the CWA defines "discharge of a pollutant" to mean, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

30. The CWA's definition of "pollutant" in Section 502(6) of the CWA, 33 U.S.C. § 1362(6), specifically identifies "biological materials . . . and agricultural waste discharged into water" as pollutants.

31. Section 502(7) of the CWA defines navigable waters to be "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

32. Horse wash water constitutes a "pollutant" as defined by Section 502(6) of the Act, 33 U.S.C. § 502(6).

33. The term "point source" is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), as "any discernible, confined and discrete conveyance, including but not limited to any . . . concentrated animal feeding operation . . . from which pollutants are or may be discharged."

34. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that EPA may issue to "persons" NPDES permits that authorize the discharge of any pollutant to navigable waters, but only in compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such terms and conditions as EPA determines are necessary to carry out the provisions of the CWA.

35. Section 402 of the CWA, 33 U.S.C. § 1342, further directs the Administrator of the EPA to prescribe conditions for NPDES permits to assure compliance with the requirements of the CWA, including conditions on data and information collection, reporting and other such requirements as the Administrator of the EPA deems appropriate.

36. Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that if a state so requests, and the Administrator of the EPA determines that the state complies with certain requirements, the Administrator of the EPA may approve a state to administer the NPDES program if the state meets certain requirements. The EPA has granted the State of Florida through the FDEP approval to issue NPDES permits pursuant to Section 402(b) of the CWA.

37. If a state NPDES program is approved pursuant to CWA Section 402(b), 33 U.S.C. § 1342(b), the Administrator of the EPA retains the authority to take enforcement action under CWA Section 309, 33 U.S.C. § 1319. *See also* CWA Section 402(i), 33 U.S.C. § 1342(i).

38. Federal regulations set forth a list of general conditions that all facilities issued NPDES permits under state NPDES permitting programs must meet. Pursuant to 40 C.F.R. § 122.41(d), a permittee has a duty to "take all reasonable steps to minimize or prevent any discharge . . . which has a reasonable likelihood of adversely affecting human health or the environment." The monitoring and reporting requirements for an NPDES permit are set forth in 40 C.F.R. §§ 122.41(j)-(l).

39. The term "facility" is defined in the regulations as "any NPDES 'point source' [such as a concentrated animal feeding operation] or any other facility . . . (including land or appurtenances thereto) that is subject to regulation under the NPDES program." 40 C.F.R. § 122.2; 33 U.S.C. § 1362(14).

40. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $32,500 per day for each violation which takes

place after March 15, 2004 through January 12, 2009; not to exceed $37,500 per day for each violation which takes place after January 12, 2009 through November 2, 2015; and not to exceed $ 52,414 per day for each violation which takes place after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134) and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. 28 U.S.C. § 2461 note; Pub. L.114-74, Section 701. See 40 C.F.R. Part 19; 82 Fed. Reg. 3633 (January 12, 2017); 78 Fed. Reg. 66,643 (Dec. 6, 2013); 73 Fed. Reg. 75,346 (Dec. 11, 2008); 69 Fed. Reg. 7,121 (Feb. 13, 2004).

## **GENERAL ALLEGATIONS**

41.  At all relevant times, through and including January 14, 2015, Defendant has owned and operated the Facility.

42.  The Facility houses a maximum of 1,100 horses, which race year-round.

43.  The Facility qualifies, or qualified at times relevant to this Complaint, as a "concentrated animal feeding operation" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), and 40 C.F.R. § 122.23(b)(2).

44.  The Facility further qualifies, or qualified at times relevant to this Complaint, as a "large concentrated animal feeding operation" as that term is defined in 40 C.F.R. § 122.23(b)(4)(ix), (xi).

45.  Pursuant to the State of Florida's NPDES CAFO regulatory program and the CWA, FDEP issued to Defendant NPDES Permit No. FLA593681 ("Permit"), with an effective date of November 24, 2009 and an expiration date of November 23, 2014. Defendant was permitted to discharge wastewater in accordance with certain effluent limitations, monitoring

requirements, and best management practices ("BMPs") set forth in the Permit. *See* CWA Section 402(b), 33 U.S.C. § 1342(b), and Fla. Stat. § 403.088(2).

46. At all relevant times, the Facility had coverage under the Permit.

47. Part I.A.1 of the Permit authorizes the discharge of manure, litter or process wastewater from Outfall D-002 at the Facility only when precipitation causes a discharge, provided that the Facility is designed, constructed, operated and maintained to contain all manure, process wastewater, runoff from the production area and direct precipitation from a 25-year, 24-hour ("25-yr/24-hr") rainfall event. The 25-yr/24-hr rainfall event for Hallandale Beach is 10.25 inches.

48. Part I.A.3 of the Permit requires that, in the event of a discharge to surface waters, in accordance with Part I.A.1, the permittee shall make oral notification to FDEP within 24 hours from the time the permittee becomes aware of the discharge. A written submission shall also be provided within five days of the time that the permittee becomes aware of the discharge.

49. Part V.B.1 of the Permit requires the permittee to maintain the following records on-site of the permitted facility and make them available for inspection:

   a) Records of all data, including reports and documents used to complete the application for the permit for at least five years from the date the application was filed, unless otherwise specified by FDEP rule;

   b) A copy of the current permit;

   c) A copy of required record drawings; and

   d) A copy of the approved, site-specific nutrient management plan.

50. Part V.B.2 of the Permit requires, for the production area, that the permittee maintain on-site, for a period of five years from the date they are created, a complete copy of the following records and must make these records available for review upon request:

   a) Records documenting the required daily and weekly visual inspections;

   b) Records documenting any actions taken to correct deficiencies. Deficiencies not corrected within 30 days must be accompanied by an explanation of the factors preventing immediate correction;

   c) Records of dead animal management and practices used;

   d) Records documenting the current design of any manure and wastewater storage structures, including volume for solids accumulation, design treatment volume, total design volume, and approximate number of days of storage capacity; and

   e) Records of the date, time, and estimated volume of any overflow.

51. Part V.B.3 requires the permittee to keep records of any manure transferred off-site and no longer under the control of the permittee. The permittee must maintain on-site, for a period of five years from the date they are created, a complete copy of the records for transferring manure and process wastewater off-site. The records must include the following items:

   a) Date;

   b) Recipient name;

   c) Recipient address; and

   d) Amount of manure being transferred.

52. Part V.C.3 of the Permit requires that the permittee conduct routine visual inspections of the production area. At a minimum, the permittee must conduct weekly

inspections of all storm water diversion devices and devices for collecting storm water run-off from the production area to the wastewater and manure storage and containment structure.

53.     On July 29, 2014, representatives of the EPA, in conjunction with FDEP, performed a CAFO Compliance Inspection (CI) at the Facility to evaluate Defendant's compliance with the requirements of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342; the regulations promulgated thereunder known as the Consolidated CAFO Regulations; and the Permit.

54.     During the CI, the EPA and FDEP inspectors reported the following:

a) Water movement was observed at Outfall D-002, in violation of Part I.A.1 of the Permit.

b) Defendant notified FDEP of surface water discharges from Outfall D-002 on the following dates: June 1, 2010; June 2, 2010; October 31, 2011; August 27, 2012; and June 8, 2013.[2]

c) The two 8- and 10-inch circular orifices in the Infield Track Lake outfall structure allow a constant exchange of water from the Infield Track Lake to the canal with the daily high and low tides. This results in an unauthorized twice-daily discharge from the Infield Track Lake to the canal, in violation of Part I.A.1 of the Permit, as Defendant's Permit does not allow for any discharge of process wastewater unless precipitation causes a discharge, provided that the Facility is designed, constructed, operated and maintained to contain all manure, process wastewater,

---

[2] The June 8, 2013 discharge was a result of the unnamed canal surcharging onto the Facility and causing flooding on the Facility, and therefore is not considered a violation.

       runoff from the production area and direct precipitation from a 25-yr/24-hr rainfall event.

    d) Defendant failed to provide its NPDES permit, NMP, and compliance records for record review as required by Part V.B.1 of the Permit.

    e) Defendant failed to maintain production area compliance records on-site, in violation of Part V.B.2 of the Permit.

    f) Defendant failed to maintain manure transfer records on-site, in violation of Part V.B.3 of the Permit.

    g) Defendant failed to produce documentation that it had conducted the visual inspections of the production area required under Part V.C.3 of the Permit, in violation of Part V.B.2 of the Permit.

55. On September 11, 2014, FDEP sent an inspection report and an offer of compliance assistance in its notification to Defendant of noncompliance.

56. On October 23, 2014, the EPA notified Defendant that discharge of horse wash water from the pretreatment pond to the Infield Track Lake and thence to the unnamed canal was unauthorized.

57. On February 26, 2015, the EPA issued Defendant a Notice of Civil Violation ("NOCV").

58. Following the CI, the EPA requested, and Defendant subsequently provided, certain compliance records to the EPA, including: the Facility's Permit; Nutrient Management Plan (NMP); Discharge Monitoring Reports (DMRs); discharge notifications; dead animal handling records; manure transfer information; and monitoring data both upstream and

downstream of Outfall D-002 in the receiving canal located on the eastern border of the Facility.

59. The CI conducted by the EPA at the Facility and the EPA's subsequent review of the compliance records provided to the EPA by Defendant revealed that Defendant failed to comply with the requirements of the Permit and was therefore in violation of the CWA as set forth below:

### Alleged Violations of Part I.A.1 of the Permit

60. On October 31, 2011, and August 27, 2012, Defendant, through its consulting engineer Mr. James A. Butkus, notified FDEP that the Infield Track Lake had staged above the 2.6-foot weir elevation at Outfall D-002, resulting in unauthorized discharges to waters of the United States, in violation of Part I.A.1 of the Permit.

61. The discharge events occurring on October 31, 2011 and August 27, 2012 were due to rainfall events accumulating less than the 25-yr/24-hr rainfall event of 10.25 inches.

62. During its CI on July 29, 2014, the EPA observed water movement at Outfall D-002 in violation of Part I.A.1 of the Permit.

63. No rainfall occurred in the 24-period leading up to the CI.

64. The two circular orifices in the Infield Track Lake outfall structure allow a constant exchange of water from the Infield Track Lake to the canal with the daily high and low tides, resulting in a twice-daily discharges from the Infield Track Lake to the canal from at least March 1, 2011 through January 14, 2015, in violation of Part I.A.1 of the Permit.

### Alleged Violations of Part V.B.1 of the Permit

65.  Upon information and belief, Defendant failed to provide its NPDES permit, NMP, and compliance records for record review during the July 29, 2014 CI, as required by Part V.B.1 of the Permit.

66.  Defendant subsequently provided the relevant documents to the EPA on October 26, 2015 and October 30, 2015.

### Alleged Violations of Part V.B.2 of the Permit.

67.  Upon information and belief, Defendant did not make available for inspection the following documents during the EPA's July 29, 2014 CI: (a) records documenting the required daily and weekly visual inspections; (b) records documenting any actions taken to correct deficiencies; (c) records of dead animal management and practices used; (d) records documenting the current design of any manure and wastewater storage structures, including volume for solids accumulation, design treatment volume, total design volume, and approximate number of days of storage capacity; (e) records of the date, time, and estimated volume of any overflow; and (f) records documenting that it had conducted the weekly visual inspections of the production area required under Part V.C.3 of the Permit

68.  Defendant subsequently provided the relevant documents referred to in Paragraph 67 and/or its reasons as to why certain documents were not available to the EPA.

### Alleged Violations of Part V.B.3 of the Permit.

69.  Upon information and belief, Defendant did not make available for inspection records of any manure and/or process wastewater transferred off-site and no longer under the control of Defendant during the EPA's July 29, 2014 CI.

70. Defendant subsequently provided the required documentation to the EPA on October 6, 2015.

## FIRST CLAIM FOR RELIEF
## UNAUTHORIZED DISCHARGES OF POLLUTANTS

71. Paragraphs 1 through 70 above are realleged and incorporated herein by reference.

72. Upon information and belief, Defendant discharged pollutants from Outfall D-002 at the Facility from at least March 1, 2011 through January 14, 2015 in violation of the Permit.

73. Each day of each discharge by in violation of the Permit is a separate violation of the CWA. 33 U.S.C. § 1319(d).

74. Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. § 1319(b) and (d), Defendant is subject to the imposition of injunctive relief and civil penalties not to exceed $32,500 per day for each violation which takes place after March 15, 2004 through January 12, 2009; not to exceed $37,500 per day for each violation which takes place after January 12, 2009 through November 2, 2015; and not to exceed $52,414 per day for each violation which takes place after November 2, 2015.

## SECOND CLAIM FOR RELIEF
## FAILURE TO MAINTAIN RECORDS RELATING TO PART V.B.1 OF THE PERMIT

75. Paragraphs 1 through 74 above are realleged and incorporated herein by reference.

76. Upon information and belief, Defendant failed to maintain the required documentation on-site, as required by Part V.B.1 of the Permit, in violation of the CWA, 33 U.S.C. § 1319(d).

77.     Each day of this Permit violation by Defendant is a separate violation of the CWA. 33 U.S.C. § 1319(d).

78.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. § 1319(b) and (d), Defendant is subject to the imposition of injunctive relief and civil penalties not to exceed $32,500 per day for each violation which takes place after March 15, 2004 through January 12, 2009; not to exceed $37,500 per day for each violation which takes place after January 12, 2009 through November 2, 2015; and not to exceed $52,414 per day for each violation which takes place after November 2, 2015.

### THIRD CLAIM FOR RELIEF
### FAILURE TO MAINTAIN RECORDS RELATING TO PART V.B.2 OF THE PERMIT

79.     Paragraphs 1 through 78 above are realleged and incorporated herein by reference.

80.     Upon information and belief, Defendant failed to comply with Part V.B.2 of the Permit which requires, in part, for the production area, that Defendant maintain on-site, for a period of five years from the date they are created, a complete copy of records documenting the required daily and weekly visual inspections, in violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

81.     Each day of this Permit violation is a separate violation of the CWA. 33 U.S.C. § 1319(d).

82.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. § 1319(b) and (d), Defendant is subject to the imposition of injunctive relief and civil penalties not to exceed $32,500 per day for each violation which takes place after March 15, 2004 through January 12, 2009; not to exceed $37,500 per day for each violation which takes place after

January 12, 2009 through November 2, 2015; and not to exceed $52,414 per day for each violation which takes place after November 2, 2015.

### FOURTH CLAIM FOR RELIEF
### FAILURE TO MAINTAIN MANURE AND PROCESS WATER TRANSFER RECORDS PURSUANT TO PART V.B.3 OF THE PERMIT

83. Paragraphs 1 through 82 above are realleged and incorporated herein by reference.

84. Upon information and belief, Defendant failed to comply with Part V.B.3 of the Permit by failing to maintain on-site, for a period of five years from the date they are created, a complete copy of the records for transferring manure and process wastewater off-site, in violation of the CWA. 33 U.S.C. § 1319(d).

85. Each day of this Permit violation is a separate violation of the CWA. 33 U.S.C. § 1319(d).

86. Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. § 1319(b) and (d), Defendant is subject to the imposition of injunctive relief and civil penalties not to exceed $32,500 per day for each violation which takes place after March 15, 2004 through January 12, 2009; not to exceed $37,500 per day for each violation which takes place after January 12, 2009 through November 2, 2015; and not to exceed $52,414 per day for each violation which takes place after November 2, 2015.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, request that this Court enter judgment on behalf of the United States against Defendant, granting the following relief:

1. Pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), assess civil penalties against GSP of up to $32,500 per day for each violation which took place after March 15, 2004

through January 12, 2009; not to exceed $37,500 per day for each violation which took place after January 12, 2009 through November 2, 2015; and not to exceed $52,414 per day for each violation which took place after November 2, 2015;

    2.    Award the United States its costs in this action; and

    3.    Grant the United States such other relief as this Court deems appropriate.

Counsel for the United States of America:

                        Respectfully submitted,

                        BENJAMIN G. GREENBERG
                        ACTING UNITED STATES ATTORNEY

BY: _____
      Annika M. Miranda
      Assistant United States Attorney
      Florida Bar No. 64975
      99 N.E. 4th Street, Suite 300
      Miami, Florida 33132
      Telephone: (305) 961-9303
      Facsimile: (305) 530-7139
      E-mail: Annika.Miranda@usdoj.gov


JEFFREY WOOD
ACTING ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division
U.S. Department of Justice


_____
ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

_____
WILLIAM A. WEINISCHKE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-4592

OF COUNSEL:

SUZANNE K. ARMOR
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, Georgia 30303
Telephone: (404) 562-9701